**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____

JENNIFER CULLEN, as the Personal
Representative of the Estate of Jacob P. Pothier,                Case No: 1:25-cv-10815
JASON POTHIER, AND
STACEY POTHIER,
     Plaintiffs

vs.

GREATER NEW BEDFORD REGIONAL
VOCATIONAL TECHNICAL SCHOOL DISTRICT;
GREATER NEW BEDFORD REGIONAL
VOCATIONAL TECHNICAL HIGH SCHOOL;
MICHAEL WATSON, individually and as the
Superintendent of Greater New Bedford Regional
Vocational Technical School District and/or Greater
New Bedford Regional Vocational Technical High School;
NANCY MARKEY, individually and as the
Human Resources Director of Greater New
Bedford Regional Vocational Technical
School District and/or Greater New Bedford Regional
Vocational Technical High School;
WARLEY WILLIAMS, individually and as the
Principal of Greater New Bedford Regional
Vocational Technical High School and/or an employee
of Greater New Bedford Regional Vocational Technical
School District;
YOLANDA DENNIS, individually and as the Executive
Director of Equity, Diversity, Inclusion, and Family
Engagement of Greater New Bedford Regional Vocational
Technical School District and/or Greater New Bedford
Regional Vocational Technical High School; AND
KATHLEEN MARTINS, individually and as
an employee/former employee of Greater New Bedford
Regional Vocational Technical School District and/or
Greater New Bedford Regional Vocational Technical
High School,
     Defendants.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

Now come the Plaintiffs, Jennifer Cullen, as the Personal Representative of the Estate of

Jacob P. Pothier, Jason Pothier, and Stacey Pothier ("Plaintiffs") and oppose the Defendants'

partial motion to dismiss in part [Doc 17].  Upon further research, Plaintiffs do not oppose

Defendants' motion with regards to Count VII for violations of the Massachusetts Civil Rights

Act ("MCRA") against the District and School.  As to all other claims, the motion should be

denied because Plaintiffs have pled facts which, if taken as true, satisfy the elements of each of

the other claims filed.

**FACTS**

On April 4, 2025 Plaintiffs filed the complaint in this matter. [Doc 1].   Plaintiffs

incorporate herein the facts and allegations in their Complaint.

**STANDARD OF REVIEW**

When filing a complaint, the plaintiff must provide a "short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a)(2).  The plaintiff is

not required to plead "detailed factual allegations."  Bell Atl. Corp. v. Twombly, 550 U.S. 544,

555 (2007). To survive a motion to dismiss "a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009).   A court "must accept all well-pleaded facts alleged in the Complaint as true

and draw all reasonable inferences in favor of plaintiff."  Watterson v. Page, 987 F.2d 1, 3 (1st

Cir. 1993).  Plaintiffs must allege factual allegations such that if the facts are taken as true, the

right to relief is above the speculative level.  Twombly, 550 U.S. at 555.  Even if recovery is very

remote and unlikely, a well-pleaded complaint should be permitted to move to discovery.

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**ARGUMENT**

The Complaint here contains factual allegations that, when taken as true and all

reasonable inferences are made, satisfy Rule 8(a)(2) and applicable caselaw.

**I.      Counts VIII and X-XIII are not barred by the Massachusetts Tort Claims Act.**

The District and School argue that the Massachusetts Tort Claims Act ("MTCA") bars Plaintiffs' claims for violations of M.G.L. c. 76, § 5 (count VIII), negligent protection of a student (Claim X), willful, wanton, and/or reckless protection of a student (Count XI), negligent retention, training, and supervision of an employee (count XII), and wrongful death in violation of M.G.L. c. 229, § 2 (count XIII).

A public employer can be held liable for injury, loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his or her employment, unless a statutory immunity applies. M.G.L. c. 258, § 1. Statutory immunities include: exercise of due care in the execution of the law; performance of a discretionary function; intentional torts; collection of taxes/lawful detention of goods; permits and licenses; inspection of property; fire protection services; police services; release from custody; and failure to prevent harm. M.G.L c. 258, § 10.

The Plaintiffs have pled affirmative actions on the part of the District and School and also provided the school committee with written notice of their position that they believe that the District and School violated Jacob's rights under the law.

1.   Plaintiffs' have pled affirmative actions by the District and School employees.

The District and School argue that they are immune under M.G.L. c. 258, § 10(j). The failure to act exception is only applicable if the situation is "not originally caused by the public employer or any other person acting on the behalf of the public employer." M.G.L. c. 258, § 10(j); Brum v. Dartmouth, 704 N.E.2d 1147, 1155 (Mass. 1999). The original cause language means "an affirmative act (not a failure to act) by a public employer that creates the 'condition or

3

situation' that results in harm inflicted by a third party." Kent v. Commonwealth, 771 N.E.2d 770, 775 (Mass. 2002) (citing, Brum, 704 N.E.2d at 1154-55). An affirmative act is an original cause of a condition or situation if it "materially contributed to creating the specific 'condition or situation' that resulted in harm." Id. at 775-76. See also Doe ex rel. B.G. v. Bos. Pub. Sch., 2019 U.S. Dist LEXIS 32705 * 2, *37 (D. Mass. March 1, 2019) (The actions of municipal defendants after learning of physical abuse of one student upon another could be found to have materially contributed to the situation that resulted in the victim's harm; motion to dismiss denied). The SJC has not ruled on a public employer's liability to prevent a tort by its own employee. See LaPierre v. City of Lawrence, 2013 U.S. Dist. LEXIS 62155 *1, *4 (D. Mass. May 1, 2013).

Plaintiffs have pled affirmative actions by District and School employees which have originally and/or materially contributed to the condition and/or situation that caused Jacob's harm. Martins' actions of grooming, sexually harassing, stalking and sexually abusing Jacob are all affirmative actions. See LaPierre, 2013 U.S. Dist. LEXIS 62155 at *6-12 (motion to dismiss denied, in part, because the underlying harm, a civilian being assaulted and raped by a police officer while on duty, was committed by a public employee abusing his position, he was placed in that position by the public employer, and the public employer did not supervise and train the employee properly). Plaintiffs have pled that the District and School knew of Martins' actions well-before she resigned and that it chose to retain Martins, suppressed and failed to file 51A reports and did not adhere to mandated policies regarding such situations.

By engaging in these affirmative actions, the District and School allowed Martins to have continued access to Jacob at the school, condoned her actions, and materially contributed to the situation and/or condition that caused Jacob's harm. See Doe v. Town of Stoughton, 2020 U.S. Dist. LEXIS 136238 *1, * 11-15 (D. Mass. July 31, 2020) (jury could find that public employer

engaged in an affirmative act by retaining employee who was reported to be in an inappropriate relationship with a student and inadequately investigating those reports, which allowed the employee to have continued access to the student and that allowance proximately caused harm); Doe ex rel. B.G. v. Bos. Pub. Sch., 2019 U.S. Dist. LEXIS 32705 at *37 (plaintiff alleged affirmative acts by school officials, including the discouraging of filing a 51A report, refusing to provide a safety plan or to respond to parents' requests, and permitting staff to sit the victim next to his perpetrator, and therefore there was a causal link between the affirmative acts and the victim's injuries; motion to dismiss denied.).  See also Reid v. Boston, 129 N.E.3d 867, 874-877 (Mass. App. Ct. 2019) (no Section 10(j) immunity where public employer set a chain of events in motion which led to harm.).

The District's and School's actions following learning of the sex video were further affirmative actions, including: allowing Martins to resign with no conditions; failing to continue and complete an investigation into her actions, as mandated by law and mandated policy; ignoring the dangers Martins posed to Jacob; allowing Martins to come into the school to bring Jacob food and to pick Jacob up from school; failing to file 51As regarding Martins' continued actions; failing to provide supportive measure to Jacob and instead treating him as a perpetrator and wrongdoer that could be criminally charged and targeting and retaliating against him.  The District's and School's affirmative actions allowed Martins continued access to Jacob for her to facilitate, placed Jacob in a worse position, and materially contributed to the harm.

The District and School cite to Armstrong v. Lamy, 938 F. Supp. 1018 (D. Mass. 1996) for support that a public employer is not liable for a failure to respond to a private harm.  Here, Plaintiffs have not alleged a private harm; they have alleged a harm that has been caused by the affirmative actions of its employees.  The Armstrong case is inapplicable to the facts and

circumstances here.  Section 10(j) is also inapplicable here.

2. <u>Plaintiffs have not filed intentional tort claims against the District or the School; therefore, the intentional tort immunity is inapplicable here.</u>

The District and School also assert that they are immune from liability for intentional torts of their employees.  Plaintiffs do not dispute that intentional torts are an exception to liability under the MTCA.  The Plaintiffs, however, have not pled intentional torts against the District or School, and therefore, the raised defense is inapplicable to these claims and improperly raised.  To the extent that Defendants' argument rests upon the bringing of Count XVIII against individuals for intentional infliction of emotional distress, plaintiffs are permitted to file inconsistent claims and make alternative statements in a pleading.  Fed. R. Civ. P. 8(d).

3. <u>The MTCA does not exempt liability for acts that began while Martins was employed and that the District and School allowed to continue after she resigned.</u>

The District and School argue that they are not liable for Martins' post resignation actions and cite to the <u>Phillips</u> case in support.   As a note, the District and School attempt to categorize Martins' separation as a termination; Plaintiffs have pled that she was permitted to resign.

Again, after Martins resigned, the District and School engaged in affirmative actions that were the original cause and/or materially contributed to the situation and/or condition that caused Jacob's harm.  The <u>Phillips v. TLC Plumbing, Inc.</u>, 172 Cal. App. 4th 1133 (Cal App. 4th 2009), case is factually distinguishable and unauthoritative here.  In <u>Philipps</u>, the claim against a former employer of a murderer was dismissed on summary judgment because the tortious acts, in their totality, occurred two years after the ending of the employee-employer relationship.

In contrast here, the affirmative actions occurred both while Martins was employed at the school and continued after she resigned and were taken by multiple employees of the District and School.  Moreover, here discovery has not been conducted whereas in <u>Phillips</u> discovery was

6

conducted.  The motion to dismiss should be denied.

4.  <u>Plaintiffs provided written notification as required by M.G.L. c. 76, §§ 5 and 16.</u>

Defendants also argue that the Chapter 76 claim should be dismissed because Plaintiffs did not provide written notice of the issue to the school committee[1].  Plaintiffs provided written notice to the school committee and opposing counsel responded to it.  [Doc 1] at ¶¶ 103-104.

In support of their argument, the District and School point to the <u>Harrington</u> case, which is a federal district case that is nonauthoritative here.  The District and School cite to no SJC, or Massachusetts court cases, interpreting the written notification requirement of Chapter 76, Sections 5 or 16 which support their argument.   Plaintiffs have been unable to find any Massachusetts cases on the issue.   Moreover, and with regards to the Harrington decision, the cases cited to within the Harrington decision are inapplicable to Section 5 and 16 cases, as those cases pertain narrowly to the student expulsion and suspension statute.

Section 16 requires that the school committee be provided notice of an issue so that it has an opportunity to remedy the issue.  The purpose of presentment letters is to ensure that the public entity is informed of an issue and has an opportunity to investigate and respond to the issue prior to any legal remedies being sought.  <u>Shapiro v. City of Worcester</u>, 982 N.E.2d 516, 522-23 (Mass. 2013).  Here, Plaintiffs served the school committee with a written presentment letter.  The Plaintiffs have satisfied the requirement of providing the school committee with a written statement prior to seeking recovery.

Defendants also cite to the <u>D'Agostino</u> case for purported support that all claims under M.G.L. c. 76, § 5 are barred against public school districts by Section 10(j) of the MTCA.  As

---

[1] Defendants argue that the violation of Section 5 should be brought under Section 16 of Chapter 76.  If this Court agrees, Plaintiffs will seek to file an Amended Complaint.

discussed above, Plaintiffs have pled affirmative acts which exclude immunity under Section 10(j).  The District and School's motion to dismiss with regards to Count VIII should be denied.

**II.      Plaintiffs should be permitted to conduct full discovery on Counts XV-XIX.**

The individual Defendants argue that all the claims against them should be dismissed because they are duplicate to the claims filed against the District and School and cite a case where the issues for trial were narrowed just prior to trial.  The case law cited to does not support the individual Defendants' argument.  At this early pleading stage, the Court should permit Plaintiffs to conduct discovery on all possible claims.  Dismissal prior to discovery may prejudice Plaintiffs as it may limit the scope of discovery to the individual Defendants.  The motion to dismiss as to Counts XV-XIX should be denied.

**III.     Plaintiffs have alleged sufficient facts which support that the District and School had actual knowledge of Martins' actions and that the District and School exhibit deliberate indifference to Jacob, and therefore, Count V should not be dismissed.**

Title IX of the Education Amendments states "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  There are two types of sexual harassment under Title IX: quid pro quo and hostile school environment.  Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 65 (1st Cir. 2002). If a school "takes timely and reasonable measures to end the harassment, it is not liable under Title IX for prior harassment", but "if it learns that its measures have proved inadequate, it may be required to take further steps to avoid new liability."  Wills v. Brown Univ., 184 F.3d 20, 26 (1st Cir. 1999) (citing, Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 285-88 (1998)).

1.   Plaintiffs have alleged actual knowledge and deliberate indifference to satisfy the elements of a hostile school environment Title IX claim.

The District and School argue that Plaintiffs have not pled actual knowledge of Martins'

actions and likewise did not plead deliberate indifference.  Plaintiffs have pled that the District

and School had actual knowledge of Martins' actions well-before she was permitted to resign

and failed to act and took the affirmative actions of retaining Martins and allowing her continued

access to Jacob, continuing to allow her to take Jacob out of class, and allowing her to continue

to groom, sexually harass and sexually abuse Jacob.

      The District and School were deliberately indifferent to Martins' grooming, sexual

harassment, and sexual abuse if their "response to the harassment or lack thereof is clearly

unreasonable in light of the known circumstances." Davis v. Monroe Cty. Bd. of Educ., 526 U.S.

629, 648 (1999).  To satisfy the deliberate indifference standard, Plaintiffs must plead that the

District and School had "actual knowledge of the harassment", meaning that "the official who

was informed of the alleged harassment be a person who, at a minimum, has the authority to

institute corrective measures."  Santiago v. Puerto Rico, 655 F.3d 61, 73-74 (1st Cir. 2011).  See

also Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246 (2009) (district liability can be shown

by evidence that a single administrator with corrective action authority responded to the

harassment with deliberate indifference).

      The District and School attempt to argue that because their knowledge has been pled as

"knew and/or should have known" in the facts that Plaintiffs have failed to meet their burden at

this early pleading stage. Pursuant to Fed. R. Civ. P. 9(b), knowledge "may be alleged

generally."  Taking all alleged facts as true at this stage, Plaintiffs have sufficiently alleged that

the District and School knew about Martins' actions before learning of the sex video.  Moreover,

in Count V for Title IX Plaintiffs incorporate these facts and then plead actual knowledge; thus,

satisfying the element at the pleading stage.  Complaint at ¶¶ 141, 142.

      Moreover, even if the District and School did not know about Martins' actions until

learning of the sex video, there is no doubt that they knew after learning of the sex video, and they took affirmative actions after gaining such knowledge which allowed Martins continued access to Jacob and allowed the grooming, sexual harassment, and sexual abuse to continue, including on school grounds, and placed Jacob in a worse position with no support and without any 51A reports being filed.

Taking these allegations as true, Plaintiffs have pled that the District and School were unreasonable in their response, did not end the harassment, but instead allowed it to continue, and were deliberately indifferent.

The District's and School's arguments also amount to positions about material facts here; assigning credibility to these positions is improper. The motion should be denied.

2. <u>Plaintiffs have alleged that the quid pro quo harassment affected tangible aspects of Jacob's Educational Training.</u>

For a prima facie quid pro quo claim Plaintiffs must allege that Jacob was subject to unwelcome sexual advances by Martins and that his reaction to these advances affected tangible aspects of his terms, conditions, or privileges of educational training. See <u>Lipsett v. Univ. of Puerto Rico</u>, 864 F.2d 881, 898 (1st Cir. 1988). The District and School incorrectly argued that there are no alleged facts to support the second element.

Plaintiffs have alleged that while Martins was employed at the school she took Jacob out of class and there were no repercussions for Jacob for not attending class. Complaint at ¶¶ 60-61. Plaintiffs have also alleged that Jacob attempted on multiple occasions to end the relationship with Martins, but Martins continued to pursue him. Complaint at ¶ 89. Plaintiffs have alleged sufficient facts for a quid pro quo Title IX claim to proceed to discovery.

**IV.    Plaintiffs have alleged sufficient facts which support that Defendants created a danger.  Count III should not be dismissed.**

The District's and School's argument with regards to Plaintiffs' Due Process claim under the state created and/or enhanced danger theory rests upon its position that the District and School did not have actual knowledge of Martins' behavior and once it had actual knowledge it acted appropriately.   There is a state created danger if Plaintiffs establish "(1) that a state actor or state actors affirmatively acted to create or enhance a danger to the plaintiff; (2) that the acts or acts created or enhanced a danger specific to the plaintiff and distinct from the danger to the general public; (3) that the acts or acts caused the plaintiff's harm; and (4) that the state actor's conduct, when viewed in the total, shocks the conscience."  Irish v. Fowler, 979 F.3d 65, 75 (1st Cir. 2020) (jury could find that by failing to follow state law and/or policy, the defendants enhanced a danger and such actions were conscious shocking and deliberately indifferent). The District and School argue that Plaintiffs do not satisfy the fourth element.

Plaintiffs have alleged that the District and School had actual knowledge of Martins' actions before learning about the sex video.  Also, similar to the Irish facts, Plaintiffs have alleged failure to adhere to federal and state law and policies.

Third, even if the District and School did not have actual knowledge until the sex video, their actions after of treating Jacob as a perpetrator, refusing to provide him supportive services, threatening to adversely affect his future, allowing Martins' access to Jacob and the opportunity to continue to groom, sexually harass, and sexually abuse Jacob, failing to file additional 51A reports, as required by law, when they knew Martins was continuing to groom, sexually harass, and sexually abuse Jacob, and its retaliatory actions against Jacob, are actions which could be found by a jury to be conscious shocking and deliberately indifferent.

The District and School cite to two decisions from the Wadsworth case as purportedly

supporting their position. The decisions the District and School cite to were at the summary judgment stage.  At the motion to dismiss stage, the court declined to dismiss claims so that the record could be developed.  Wadsworth v. Maine Sch. Admin. Dist. 40/Reg'l Sch. Unit 40, No. 2:19-cv-00577-JAW, 2023 U.S. Dist. LEXIS 54590, at *81 (D. Me. Mar. 30, 2023).  Moreover, the First Circuit review of the summary judgment ruling did not consist of any substantive discussion about what is conscious shocking and the lower court decision was upheld on other grounds. Wadsworth v. Nguyen, 129 F.4th 38, 52-53 (1st Cir. 2025).  The Wadsworth decision is not on point to the issue before this Court.  The motion to dismiss should be denied.

Plaintiffs have also alleged a duty to protect due to the District's and School's knowledge of Martins' actions and that Jacob, the minor victim, was in clear, obvious, and present peril of being subjected to continuous grooming, sexual harassment, sexual abuse, and sexual violence. Hasenfus v. LaJeunesse, 175 F.3d 68 (1st Cir. 1999).  As the Plaintiffs have alleged facts that are sufficiently conscious shocking and the District and School do not challenge Count III on this theory, Count V should also proceed on this theory.

**V.    Plaintiffs have alleged facts such that Defendants could be liable under CAVRA.**

The Child Abuse Victims Rights Act ("CAVRA") permits a victim of sexual abuse who was a minor at the time of the abuse, to file a civil lawsuit for personal injuries, even if the injury occurred when the victim was no longer a minor.  18 U.S.C. § 2255. The statute does not specify whether employers are liable for the acts of their employees and courts, following the cannons of statutory construction, have declined to add such language to the statute.  See A.M. v. Wyndham Hotels & Resorts, Inc., 2024 U.S. Dist. LEXIS 57880 (S.D. Ohio March 29, 2024); Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd., 860 F.Supp.2d 1337 (S.D. Fla. 2012).  Caselaw supports that in the circumstances alleged in the Complaint here liability for the employer could result.

Employers who aid and abet the perpetrator or benefit from the perpetrator's actions may be liable. <u>A.M.</u>, 2024 U.S. Dist. LEXIS 57880; <u>Jane Doe No. 8</u>, 860 F.Supp.2d 1337.

The decision with regards to aiding and abetting in the <u>E.M. v. Varsity Brands, LLC</u> case, cited to by the District and School, turned on the fact that there were no allegations that the employer knew of the sexual abuse.  2024 U.S. Dist LEXIS 97261 *19-20 (C.D. Cal. May 31, 2024).   The <u>E.M.</u> case finding is inapplicable here because Plaintiffs have alleged that the District knew of Martins' actions before learning of the sex video, that the District and School took the affirmative actions of retaining Martins, not complying with Section 51A, and not providing Jacob with any supportive measures.  All of these actions aided and abetted Martins because it permitted her to continue to engage in unlawful behavior that is prohibited under CAVRA.   During this time, due to Martins' grooming, sexual harassment and sexual abuse, the sex video was made.  Whether or not Martins herself recorded the video is irrelevant because it can be inferred that her grooming, sexual harassment, and sexual abuse induced, enticed, coerced Jacob for the purpose of using him, making the video, and sexually exploiting him.  18 U.S.C. § 2251; 18 U.S.C. § 2422.  The video contained child pornography because it depicted a minor.  It is reasonable to infer from the facts pled that Martins was knowingly in possession of the video and/or knowingly accessed the video.  18 U.S.C. § 2252A.

The District's and School's citation to <u>U.S. v. Poulin</u>, 631 F.3d 17 (1st Cir. 2011), is unsupportive of its arguments.  The case supports Plaintiffs' position because the First Circuit broadly interpreted Section 2251(a) to include all instances where any materials used to make a video are shipped interstate and broadly interpreted "production" to mean that the video was made.  Under the facts here, it is reasonable to infer that whatever equipment was used to take the video, a cell phone or camera, was shipped interstate and the video in fact was made.

The citation to <u>U.S. v. Gonyer</u>, 761 F.3d 157 (1st Cir. 2014), is also unsupportive of the District's and School's position. The First Circuit's decision in <u>Gonyer</u> supports that the persuasion, inducement, enticement, and/or coercion began when Martins started grooming Jacob she began to persuade, induce, entice, and coerce him to engage in a sexual act with her and that she intended for the conduct to be videoed.  761 F.3d at 167-168.

Even after learning of the sex video, the District and School continued to aid and abet Martins by allowing her to resign without any conditions, allowing her onto the school campus to bring Jacob food and pick him up from school, and by not filing 51A reports about the known, continuing sexual relationship.  Jacob, who was thirty-years younger than Martins, was incapable of appraising the nature of the conduct and was coerced to engage in sexual acts with Martins. 18 U.S.C. § 2242(b).  The District's and School's affirmative actions both while Martins was employed and after they allowed her to resign, aided and abetted her unlawful actions.

The District and School also attempt to argue that Plaintiffs' CAVRA claim should be dismissed because the sexual abuse did not take place on federal property and cite to <u>U.S. v. Mackety</u>, 650 F.3d 621 (6th Cir. 2011).  The Court should reject this argument because the <u>Mackety</u> case does not establish such a standard and merely cites to an excerpt of the statute as applicable to the facts in that case. 650 F.3d at 622 n. 1.  CAVRA applies to any actions which take place in the "territorial jurisdiction of the United States."  The District and School are located within the territorial United States and subject to the jurisdiction of this Court, and therefore subject to CAVRA. 18 U.S.C. § 5; 18 U.S.C. § 7. The motion should be denied.

**VI.    Plaintiffs have alleged a plausible claim under the Massachusetts Civil Rights Act against the individual Defendants.**

The individual Defendants argue that Count XVII for violations to the MCRA should be dismissed on its merits for failure to allege Jacob's constitutional or state rights were violated or

that any rights were violated by way of threats, intimidation, or coercion. "To establish a claim under the [MCRA], a plaintiff must prove that (1) the exercise or enjoyment of some constitutional or statutory right; (2) has been interfered with, or attempted to be interfered with; and (3) such interference was by threats, intimidation, or coercion." Doe ex rel. B.G. v. Bos. Pub. Sch., 2019 U.S. Dist. LEXIS 32705, at *28 (internal quotations and citations omitted). A "threat" consists of "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm;" "intimidation" involves "putting in fear for the purpose of compelling or deterring conduct;" and "coercion" is "the application to another of such force, either physical or moral, as to constrain him [or her] to do against his [or her] will something he [or she] would not otherwise have done." Glovsky v. Roche Bros. Supermarkets, Inc., 17 N.E.2d 1026, 1035 (Mass. 2014), quoting Haufler v. Zotos, 845 N.E.2d 322, 335 (Mass. 2006). Whether there is a threat, intimidation or coercion is evaluated by an objective, reasonable person standard. See Meuser v. Fed. Express Corp., 564 F.3d 507, 520 (1st Cir. 2009); Haufler, 845 N.E.2d at 335. "Specific intent or of some overtly menacing behavior" is not required. Reproductive Rights Network v. President of the Univ. of Mass., 699 N.E.2d 829, 839 (Mass. App. Ct. 1998).

Here, Plaintiffs, in Counts XV and XVI, allege that Jacob's federal rights were violated by the individual Defendants. The individual Defendants do not challenge those claims on the merits. A constitutional right has been sufficiently pled by Plaintiffs.

Plaintiffs also allege that the individual Defendants threatened, intimidated, and coerced Jacob by calling Jacob, a seventeen year old student who was being groomed, sexually harassed, and sexually abused by an employee that was approximately thirty-years older than him, to the front office, demanding that he empty his pockets, turn over his cellphone, and threatening him with adverse criminal consequences, and then providing no support to Jacob, the victim of the

constitutional violation, and threatening to adversely affect current and future endeavors related

to football and his career.  Applying the reasonable, objective person standard, a jury could find

that the individual Defendants engaged in acts that threated, coerced, and intimidated Jacob, and

that these threatening, intimidating, and coercive actions, coupled with their allowing Martins to

resign without conditions and come onto the campus to continue to groom, sexually harass, and

sexually abuse Jacob, caused a violation of his constitutional rights and rights to education.

Thomas v. Town of Chelmsford, 267 F.Supp.3d 279, 310 (D. Mass. 2017) (motion to dismiss

MCRA claim against individual defendants denied because plaintiffs alleged that constitutional

violations under § 1983 and also alleged sufficient facts that could lead to a finding of a

deprivation of rights to education.).

The individual Defendants' motion should be denied and Plaintiffs should be permitted to

conduct discovery.

**VII.    Section 51A created a duty for the Defendants by way of the special relationship they held with Jacob.**

The District and School argue that Count IX (violation of M.G.L. c. 119, § 51A) should

be dismissed because the statute does not provide for a private right of action.  Plaintiffs agree

that the statute itself does not specifically state that a private right of action can be filed for

failure to fulfill the mandates under the statute.  Plaintiffs' claim, however, derives from

principals of common law duties when a special relationship exists.

It is well-established that schools in Massachusetts have a special relationship with their

students and that they owe a duty of care to students.  Alter v. Newton, 617 N.E.2d 656, 661

(Mass. App. Ct. 1993) (plaintiff was "a student to whom [the city] owed a duty of care").

including to protect students and act in accordance to legislative mandates in protecting students.

See also Driscoll v. Bd. of Trs., 873 N.E.2d 1177, 1193 (Mass. App. Ct. 2007) (duty owed to

16

minor children includes special protections afforded by the courts and legislature).

Section 51A created a duty and mandated that the District and School, under the circumstances here, file 51A reports, including before the learning of the sex video when it knew of Martins' actions, and after they allowed Martins to resign and it knew that Martins was continuing to groom, sexually harass, and sexually abuse Jacob.  However, the Defendants breached their duty by actively choosing not filing 51A reports.  The District's and School's motion to dismiss should be denied.

## VIII.    The Wrongful Death Count (Count XIII) cannot be dismissed on a causation basis, including proximate cause, because discovery has not been conducted in this matter.

In addition to arguing that the Wrongful Death claim should be dismissed under the MTCA, the District and School also argue that Plaintiffs cannot prove proximate cause because the specific harm to Jacob was not reasonably foreseeable.  The specific harm, however, does not have to be foreseeable.  See Flood v. Southland Corp., 616 N.E.2d 1068, 1075-76 (Mass. 1993).

The District and School do not cite to any caselaw where a wrongful death claim is dismissed on a motion to dismiss for failure to prove proximate cause.  The District and School cite to an Ohio case, Staten v. Ohio Exterminating Co., 704 N.E.2d 621 (Ohio App. 3d 1997), allegedly in support of their argument, but that case is not authoritative here, involved a negligent hiring claim, was a decision made on a summary judgment motion and after discovery was completed, and the facts there are distinguishable from those here.

Moreover, in the Staten case, the Ohio court noted that when there is a special relationship and the defendant had knowledge of the circumstances which caused the harm, that the defendant could be held liable.  Plaintiffs here have alleged that there is a special relationship between Jacob and the District and School, that the District and School knew of the circumstances that caused the harm, and took affirmative acts which caused the harm.  Thus,

applying the standard discussed in <u>Staten</u> to the allegations here, along with taking all allegations as true, results in a well-pled claim which should not be dismissed.

The District and School cite to one other case, <u>Or v. Edwards</u>, 818 N.E.2d 163 (Mass. App. Ct. 2004), which was a ruling made after trial and which upheld the jury's verdict in favor of the plaintiff.  The <u>Or</u> case also supports Plaintiffs' position that they have alleged sufficient facts and should be permitted to conduct discovery on the wrongful death claim.

Plaintiffs should be permitted to conduct discovery here and develop the evidentiary record on this claim.  The motion should be denied.

## IX.    Plaintiffs have alleged sufficient facts for the negligent infliction of emotional distress claim to move to discovery.

To recover for negligent infliction of emotional distress, a plaintiff must prove (1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case. <u>Payton v. Abbott Labs</u>, 437 N.E.2d 171, 181 (Mass. 1982). The District and School seek dismissal of Count XIV, Negligent Infliction of Emotional Distress ("NIED"), and argue that Plaintiffs did not plead any non-conclusory allegation that Jacob suffered physical harm manifest by objective symptomatology, and cite to <u>Payton</u> in support.

The <u>Payton</u> case remains accurate as to the NIED elements, it, however, is outdated in regards to the requirement for the fourth element.   Following Payton, the SJC relaxed the requirement of "physical harm manifested by objective symptomology."  <u>Sullivan v. Boston Gas. Co.</u>, 605 N.E. 2d 805, 808 (Mass. 1993).  After <u>Sullivan</u>, a successful plaintiff must "[c]orroborate (his) mental distress claims with enough objective evidence of harm to convince a judge that [the] claims present a sufficient likelihood of genuineness to go to trial." <u>Sullivan</u>, 605 N.E.2d at 810. "The scope of physical harm required to sustain a negligent infliction of

emotional distress claim has expanded [to a] range of symptoms that may provide the type of objective evidence to prove physical harm [including] symptoms that could be classified as more mental than physical." Dyer v. Steward Carney Hosp., Inc., 2021 U.S. Dist. LEXIS 191779, at *10 (D. Mass. Oct. 5, 2021) (citation and internal quotation omitted). See e.g., Cremaldi v. Wells Fargo Home Mortg., 2015 U.S. Dist. LEXIS 195563, at *22 (D. Mass. Mar. 31, 2015) (anxiety, loss of sleep, loss of appetite, and been unable to continue their customary life style).

Plaintiffs have alleged that because of the District's and School's actions, treatment, and the school environment, Jacob became disengaged in school, skipped school, and demonstrated actions which could support a finding that he was suffering from severe emotional distress.

Moreover, engaging in discovery is necessary to provide additional facts that will further establish the fourth element of this claim. It is reasonably foreseeable that discovery will reveal Jacob experienced symptoms similar to the types of symptoms that Massachusetts courts have held sufficient to support an NIED claim. At this stage, the Plaintiffs have demonstrated the possibility of emotional distress and resulting symptoms. Therefore, this count should not be dismissed and Plaintiffs should be permitted to move to discovery on this claim.

## X.    The individual Defendants' conduct could be found to be extreme and outrageous.

The individual Defendants here have been sued in their individual capacity and the intentional infliction of emotional distress claim is properly brought under such capacity. See Spring v. Geriatric Auth. of Holyoke, 475 N.E.2d 727 (Mass. 1985). The individual Defendants argue that the intentional infliction of emotional distress claim should be dismissed because the conduct alleged could not be found to be outrageous and extreme.

"To be considered extreme and outrageous, the defendant's conduct must be beyond all bounds of decency and . . . utterly intolerable in a civilized community." Sena v.

Commonwealth, 629 N.E.2d 986, 993 (Mass. 1994). The question of whether actions are extreme and outrageous is a question for the factfinder to resolve.  O'Neil v. DaimlerChrysler Corp., 538 F. Supp. 2d 304 (D. Mass. 2008) (summary judgment denied because a jury determines whether conduct is extreme and outrageous).

The individual Defendants seek to downplay the circumstances where administrators doing nothing to stop an employee from grooming, sexually harassing, and sexually abusing a student and failing to file a 51A report, and then when they learn of a sex video confronting the student victim in a hostile manner, telling him to empty his pockets, accusing him of engaging in criminal conduct for which he could be prosecuted, threatening the high school student and his parents that if the perpetrator is found to have violated the law, the victim will suffer in the form of negative consequences for his future education and career, and then allowing the perpetrator to resign with no conditions, allowing her continued access to the victim and continuing to refuse to file 51A reports.  Under these circumstances, the actions of the individual Defendants could be found to be extreme and outrageous.   Defendants' motion to dismiss should be denied.

## XI.    As Plaintiffs have pled plausible tortious claims, Count XIX for loss of consortium should not be dismissed.

The individual Defendants' only argument with regards to the dismissal of Count XIX (loss of consortium) is that due to their belief that the tort claims should be dismissed, the loss of consortium claim should also be dismissed.  As discussed herein, such arguments are without merit.  The loss of consortium claim should remain.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' partial motion to dismiss, excluding Count VII which Plaintiffs do not oppose, and allow Plaintiffs to conduct discovery in this matter.

PLAINTIFFS,
JENNIFER CULLEN, as the Personal
Representative of the Estate of Jacob P. Pothier,
JASON POTHIER, and
STACEY POTHIER
By their Attorneys,

*/s/ Catherine B. Kramer*
Scott W. Lang, Esq. BBO #285720
Catherine B. Kramer, Esq. BBO #684876
Anastasia Kondrosov, Esq. BBO #713296
Lang, Xifaras & Bullard
115 Orchard Street
New Bedford, MA  02740
(508) 992-1270
swlang@lxblaw.com
cbkramer@lxblaw.com
akondrosov@lxblaw.com

Dated: May 27, 2025

## CERTIFICATE OF SERVICE

I, Catherine B. Kramer, hereby certify that on May 27, 2025, the foregoing document was filed through the ECF system, and will be sent electronically to all registered participants as identified on the Notice of Electric Filing, and paper copies will be sent to those indicated as non-registered participants.

*/s/ Catherine B. Kramer*

21